[No. 17781-5-III.    Division Three.    February 29, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. SERGIO JEROME TURNER, *Appellant*.

*Lorraine A. Parlange*, for appellant.

*Steven Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

KURTZ, C.J. — Sergio Jerome Turner was convicted of second degree kidnapping, unlawful imprisonment, attempted second degree murder and third degree assault. During pretrial proceedings, Mr. Turner began yelling threats and obscenities at the court and his counsel and, ultimately, he was physically removed from the courtroom. He appeals his conviction, contending the court erred by (1) failing to recuse itself from hearing the trial, (2) failing

to hold a hearing prior to requiring him to wear restraints during the trial, (3) refusing to require the State to produce an officer's field notes, (4) failing to instruct the jury that fourth degree assault was a lesser included offense of attempted first degree murder, and (5) denying him a fair trial due to the accumulation of errors. He also contends that he was denied effective assistance of counsel because his attorney requested an instruction on diminished capacity, but failed to present expert testimony to support the instruction.

We conclude the trial court erred by failing to conduct a hearing and making a record before imposing restraints on Mr. Turner during his trial. We reverse and remand for a new trial.

## FACTS

In December 1997, Sergio Turner went to visit Kim Bonanno, whom he had been seeing for about a week. During the evening, Mr. Turner began to act strangely, asserting that someone was after him. Ms. Bonanno could not make sense of much of what Mr. Turner said to her that night. He asserted that someone had put drugs in his alcohol, and whoever was trying to get him was hiding in the laundry room of her building. He also tore up Ms. Bonanno's nightgown and went through her personal papers. They drank a substantial amount of alcohol. At some point, Mr. Turner attempted to strangle Ms. Bonanno with a stocking.

As the evening wore on, Mr. Turner became abusive and demanded that Ms. Bonanno take him somewhere in the car. He threatened he would hurt her or her four-month-old son if she did not comply. As Ms. Bonanno was driving with Mr. Turner and her child, she failed to yield the right of way to a police officer's vehicle. The officer, Paul Lebsock, stopped her car. When he attempted to get information about her passenger, Mr. Turner threatened to kill Ms. Bonanno and began to choke her in front of the officer. Af-

ter a brief struggle, Officer Lebsock restrained Mr. Turner. Mr. Turner was handcuffed, and lay on the ground, writhing. An ambulance took him to the hospital.

Mr. Turner was charged with several offenses including first degree kidnapping, attempted first degree murder, and several counts of assault.

At a pretrial hearing held on the day of Mr. Turner's scheduled jury trial, Mr. Turner became angry with his counsel and shouted threats and obscenities at his lawyer and the court. He grabbed his attorney by the tie. Mr. Turner was removed from the courtroom and his hearing was continued. Later that day, at the continued hearing, Mr. Turner behaved in the same manner, threatening the court and counsel. He again grabbed his attorney by the tie and would not release the tie, until he was physically removed from the courtroom. The apparent motivation for Mr. Turner's behavior was his conviction that his attorney was unprepared for the trial. Mr. Turner stated that his counsel told him he did not have a chance and that he should accept the plea bargain. The trial court informed Mr. Turner that his choice was either to accept the plea bargain or proceed to trial that day.

After Mr. Turner was removed from the courtroom for the second time, the court decided to proceed with jury selection. The court said that Mr. Turner's conduct "[indicated] his disinclination to participate this afternoon in jury selection at the very least and probably in the remainder of the trial." Mr. Turner's counsel stated he wished to withdraw as Mr. Turner's attorney. The trial court expressed its reluctance to grant this request because the court believed that Mr. Turner's conduct was calculated to disrupt the trial and gain a continuance. The court stated that it would make arrangements with the court administrator for a video link between the jail and the courtroom. The process of jury selection began that afternoon without Mr. Turner being present in the courtroom.

The next day, Mr. Turner's counsel again asked for permission to withdraw. Faced with the prospect of either

compelling an attorney to represent a client who had twice assaulted him, or allowing a disruptive defendant to act as his own counsel, the court granted the motion to withdraw. At the same time, the court granted a continuance so that Mr. Turner's new counsel could prepare for trial.

Four months later, Mr. Turner's trial came on for hearing before the same judge who had presided over the pretrial hearing. Mr. Turner's new attorney asked the judge to recuse himself. The court declined.

Before trial, Mr. Turner filed a motion with the court asking that he be allowed to be present in the courtroom during his trial. The hearing was conducted by video linkup between the jail and the courtroom. During the course of that hearing, the court secured promises from Mr. Turner that he would conduct himself in an appropriate manner during trial. The court ruled that Mr. Turner could attend the trial, but that he would be restrained by "a belly chain and shackles." Mr. Turner's counsel objected and demanded a hearing regarding the necessity for the restraints. The court denied the request and stated its opinion that based on Mr. Turner's previous behavior, subjecting him to restraints was not an abuse of discretion.

During jury selection, Mr. Turner's counsel again objected to the restraints, and noted for the record that several jury members noticed he was in restraints when he failed to stand when the court was announced. The court overruled the objection, but stated that the people sitting at counsels' table would not be required to stand when the court entered and exited. Through counsel, Mr. Turner complained that the jury pool was already contaminated. He further noted that his handcuffs were plainly visible to the jury. The court again stated that the restraints were necessary, and Mr. Turner would be required to wear them throughout the duration of the trial.

After the prosecution rested, Mr. Turner's counsel again raised the issue of Mr. Turner's restraints. He noted that Mr. Turner had conducted himself appropriately during the trial and that the defense wanted the restraints removed

for the presentation of its evidence. Specifically, counsel stated that Mr. Turner intended to testify and that he should not be compelled to testify in restraints. In response, the court informed counsel that it planned to have Mr. Turner placed in the witness box before the jury was brought into the courtroom, and then removed from the witness box only after the jury had been removed from the court for a recess in the proceedings. Mr. Turner's counsel stated that the shackles, waist belt, and leg chains would limit Mr. Turner's ability to fully testify in terms of standing to show his size and physical build, to use diagrams, or simply to use his hands to express himself. The court declined to modify the previous ruling, whereupon Mr. Turner stated that he would not testify due to the restraints.

During the trial, Ms. Bonanno said Mr. Turner tried to choke her with a stocking. She said she had informed the prosecution of this fact months prior to trial. Officer James Olsen testified he had made his initial notes while interviewing Ms. Bonanno on a small notebook that he kept at his residence. Mr. Turner complained that he had not received these notes. The court noted that Mr. Turner's first counsel had a signed omnibus discovery order in the file, but that present counsel did not have his order signed and, therefore, he was not entitled to the field notes. The court also indicated that the omnibus application did not specifically request field notes and such notes are not normally produced without a specific motion.

In giving the jury instructions, the court declined to give a lesser included offense of fourth degree assault for the attempted first degree murder charge. Mr. Turner objected. Mr. Turner also requested a diminished capacity instruction, but the court did not give it to the jury.

The jury convicted Mr. Turner of second degree kidnapping, unlawful imprisonment, attempted second degree murder, and third degree assault. He appeals.

## ANALYSIS

Mr. Turner argues that he was denied a fair trial

because he was required to wear restraints. Generally, a defendant has a right to appear before the jury free of shackles or other restraints. *Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir. 1985); *State v. Hutchinson*, 135 Wn.2d 863, 887, 959 P.2d 1061 (1998), *cert. denied*, 525 U.S. 1157 (1999). This is because the appearance of a defendant in restraints may reverse the presumption of innocence by prejudicing the jury against the defendant, and thus denying due process. *Id.* at 887.

██ ██ The extent to which security measures are necessary is within the trial court's discretion. *State v. Hartzog*, 96 Wn.2d 383, 400, 635 P.2d 694 (1981). But that discretion must be founded upon a factual basis set forth in the record. *Id.* This means the trial court must conduct a hearing and make a record before imposing restraints on a criminal defendant. *State v. Flieger*, 91 Wn. App. 236, 241, 955 P.2d 872 (1998), *review denied*, 137 Wn.2d 1003 (1999). At the hearing, the court is directed to examine and analyze:

> "[T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies."

*Hartzog*, 96 Wn.2d at 400 (quoting *State v. Hartzog*, 26 Wn. App. 576, 588, 615 P.2d 480 (1980), *aff'd in part, rev'd in part by* 96 Wn.2d 383, 635 P.2d 694 (1981)).

In this case, prior to ordering restraints, the court witnessed several outbursts by Mr. Turner, watched him assault his attorney in court, and ordered him physically removed from the courtroom. After learning that Mr. Turner wanted to be present during the trial, the court informed him of the conduct expected of him during the proceedings. During this exchange, the court added, "You

understand that the court will permit you to be back in the courtroom, but you will be secured by a belly chain and shackles?'' Mr. Turner's counsel objected to this requirement. The court responded:

> I understand your position, Counsel. Obviously the court has to balance a couple of competing interests here, obviously the right of the defendant to a fair trial. Obviously the court doesn't throw security out the window, and I do, I think, have a broad degree of discretion in these matters, and I think, considering the record of these things as a whole based on prior appearances in the courtroom, the report from Eastern State Hospital, et cetera—taking all those things into consideration, I think that the court is not engaging in [an] abuse of discretion in allowing the belly chain and shackles. I mean, that's something that's gone on many times before in this county and other counties. There's a balance that has to be struck here. We're going to have to do the best we can with it.

The court then proceeded with jury selection. After the jurors were excused, Mr. Turner's counsel again objected to the shackling:

> Judge, it's the same issue that the court has addressed but for the record. When the bailiff announced for everyone to stand up, obviously my client can't stand up because it would expose the shackling, and there was no question but several of the jurors noticed that the defendant didn't stand and also was handcuffed. They were focused. I could tell by their reaction, their eye movement that they noticed that. I want the record to reflect that.

In response, the court asked the people at counsels' table not to rise when the court entered and exited the courtroom.

Mr. Turner's counsel argued a hearing was necessary on the issue of restraints, and the failure to hold a hearing was an abuse of discretion. The court responded:

> But I think I feel reasonably comfortable in saying that the record here is abundantly clear. The defendant on his prior appearances in the court lost control on two different occasions,

two different hearings, grabbed his attorney by the tie and had to be forcibly extracted from his attorney's tie, had to be removed from the courtroom kicking and screaming in horizontal fashion by a couple of deputies and interspersed with 40 or 50 renditions of the F word towards the bench.

I think that in this court's mind I think I feel reasonably safe in concluding that a reviewing court would find that it's not an abuse of the court's discretion to exercise a modicum of security by restraining the defendant's arms and legs.

█ There are constitutional and permissible ways for a trial judge to handle an obstreperous defendant. The trial court may " '(1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.' " *State v. DeWeese*, 117 Wn.2d 369, 380, 816 P.2d 1 (1991) (quoting *Illinois v. Allen*, 397 U.S. 337, 344, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970)). Although the manner of maintaining order in the courtroom is within the trial court's discretion, the trial court should employ the least severe remedy to accomplish the desired result. *Id.* at 380. Mr. Turner's initial removal from the courtroom was within the trial court's discretion to maintain an orderly and fair proceeding.

However, four months had passed since the trial court banished Mr. Turner from the courtroom. In response to Mr. Turner's request to be permitted to be present for his trial, the court conditioned his return upon the use of a belly chain and shackles. In response to Mr. Turner's request for a hearing regarding whether restraints were necessary or the most appropriate remedy, the court refused to hold a hearing. Before exercising its discretion to order restraints, the court did not make the analysis required by *Hartzog*. Consequently, the court's exercise of discretion is not "founded upon a factual basis set forth in the record." *Hartzog*, 96 Wn.2d at 400.

In *Hutchinson*, the court held a hearing but failed to examine the *Hartzog* factors, and instead analyzed only the physical layout of the courthouse and considered the types

of restraints available. *Hutchinson*, 135 Wn.2d at 888. The *Hutchinson* court found that the failure to consider the *Hartzog* factors was harmless error, because the restraints used, a leg chain attached to the floor under a skirted counsel table, prevented the jury from seeing that the defendant was restrained. *Id.* The *Hutchinson* court stated that to succeed on the claim, the defendant "must show the shackling had a substantial or injurious effect or influence on the jury's verdict. Because the jury never saw the Defendant in shackles, he cannot show prejudice." *Id.*

■ An error infringing upon a defendant's constitutional rights is presumed to be prejudicial, and the State has the burden of proving the error was harmless. *State v. Caldwell*, 94 Wn.2d 614, 618-19, 618 P.2d 508 (1980). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

Mr. Turner was charged with first degree kidnapping, attempted first degree murder, and several counts of assault. The jury found him guilty of lesser offenses of second degree kidnapping, unlawful imprisonment, attempted second degree murder, and third degree assault. Presented with a similar fact pattern in *Flieger*, we stated:

> While the jury did not convict Mr. Flieger of the greater charge, it also did not acquit him. We cannot determine beyond a reasonable doubt that the State's use of the shock box had no effect on the jury's impression of Mr. Flieger's guilt.

*Flieger*, 91 Wn. App. at 243. Likewise, we cannot determine beyond a reasonable doubt that Mr. Turner's restraints had no effect on the jury's impression of his guilt.

The convictions are reversed and the case is remanded for a new trial. Because we have ordered a new trial, we will not address the other issues raised by Mr. Turner's appeal.

Schultheis, J., concurs.

Brown, J. (dissenting) — Sergio J. Turner was twice violent, disorderly, and disruptive in open court, first, during morning proceedings before trial and second, after warnings, during afternoon jury selection. Both times he was so loud, verbally abusive, threatening to the court and counsel, assaultive to his attorney, and generally disruptive, he was twice forcibly restrained and removed from the courtroom. The assaults necessitated a new defense attorney, a trial continuance, and an unjust delay of the case. The judge likely knew beforehand the charges and alleged facts indicating Mr. Turner lacked sufficient self-control to keep from choking and threatening to kill one victim while in the presence of a police officer, another assault victim. When the State rested, the court certainly knew these additional facts.

Importantly, the trial court did not exercise its discretion until confronted with *actual*, not potential courtroom disruptions.

Therefore, the outcome is controlled by *State v. DeWeese*, 117 Wn.2d 369, 380-81, 816 P.2d 1 (1991) (actual disruption), not *State v. Hartzog*, 96 Wn.2d 383, 635 P.2d 694 (1981) (potential disruption). Even the *Hartzog* court recognized the need to exercise discretion to "maintain order and prevent injury" when supported by the facts. *Id.* at 400. Recently our Supreme Court recognized the critical distinction between actual and potential court disruptions. *State v. Finch*, 137 Wn.2d 792, 846-53, 975 P.2d 967 (attempting to escape from a preliminary hearing, violent behavior before coming to court or in court, disorderly conduct in the courtroom, and disruptive behavior in court justify trial restraints), *cert. denied*, 528 U.S. 922, 120 S. Ct. 285, 145 L. Ed. 2d 239 (1999). A court must limit its focus to relevant factors indicating "compelling circumstances" (here: violent, disorderly, and disruptive behavior) when deciding responsive measures for maintaining courtroom security. *Id.* at 850.

Certainly, we must be forever vigilant to guard against the risk of denigrating the presumption of innocence by courtroom shackling. *State v. Hutchinson*, 135 Wn.2d 863, 887-88, 959 P.2d 1061 (1998), *cert. denied*, 525 U.S. 1157 (1999). Nevertheless, we must be equally aware of a trial judge's duty to maintain order, dignity, and elementary standards within the courtroom for the proper administration of criminal justice. *DeWeese*, 117 Wn.2d at 380. The manner of maintaining order in the courtroom is within the trial judge's discretion. *Id*. The preference when exercising discretion is to seek the least disruptive remedy. *Id*. Here, rather than excluding Mr. Turner from the trial for "good cause shown" under CrR 3.4(a), the court chose a lesser alternative.

Significantly, the trial court twice exercised its decision-making discretion; first, when deciding how to manage the actual disruptions, and second, when granting partial relief on the motion to reconsider. Mr. Turner does not argue the first decision was an abuse of discretion. However, Mr. Turner convinced the majority that the trial court abused its discretion by not giving a sufficient *Hartzog* hearing regarding his potential for future disruptive behavior when he asked for reconsideration. This argument ignores the actual disruptions and the *Finch* court's admonition that solely the relevant factors are to be considered. *Finch*, 137 Wn.2d at 850. Although Mr. Turner suggested other factors during his argument, the court decided the original disruptive factors were relevant.

Since the trial court did not initially err, the real issue is whether it abused its discretion when declining to fully reverse its earlier decision at reconsideration without reciting all *Hartzog* factors. "The trial court must base its decision to physically restrain a defendant on evidence which indicates that the defendant poses an imminent risk of escape, that the defendant intends to injure someone in the courtroom, or that the defendant cannot behave in an orderly manner while in the courtroom." *Finch*, 137 Wn.2d at 850. The court proceeded on evidence Mr. Turner was

actually disruptive. Our appellate standard for abuse of discretion claims is generally whether the trial court's decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons; at times a no reasonable person/judge formulation has also been used. *See State v. Scott*, 72 Wn. App. 207, 230, 866 P.2d 1258 (1993), *review granted*, 124 Wn.2d 1001, 877 P.2d 1287 (1994), *aff'd by State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995) (Forrest, J., dissenting).

Because the court gave tenable reasons and grounds (the disruptions) supporting its initial decisions, it follows that those reasons and grounds remain valid when given upon reconsideration. Moreover, courtroom security is uniquely an area that should be left to the individual judge's discretion. Each judge should decide how best to control a disruptive or, as here, a violent litigant to best protect those present and him- or herself. Appellate courts should be reluctant to second-guess those decisions. I cannot say the trial court's decisions were manifestly unreasonable in the sense no reasonable judge would have so ruled or proceeded. *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 667, 771 P.2d 711, 780 P.2d 260 (1989). Accordingly, I respectfully dissent.

Review granted at 141 Wn.2d 1011 (2000).