# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58258-9-II |
| Respondent, | |
| v. | |
| ALBERT JERMAINE MCCLENDON, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Albert McClendon pleaded guilty to second degree murder after he and another person shot and killed a man while robbing him on his front porch. Consistent with the plea agreement, McClendon argued for a low-end standard sentence, and the State argued for a high-end standard sentence. Ultimately, the trial court imposed a sentence in the middle of the standard range.

McClendon appeals his standard range sentence arguing that he was unconstitutionally shackled during sentencing, that the trial court failed to adhere to the guidance of the Sentencing Reform Act of 1981, ch. 9.94A RCW (SRA), and that the trial court erred by imposing a "Victim Penalty Assessment" (VPA) and ordering restitution interest. We hold that although McClendon was restrained during sentencing, his restraint was not unconstitutional, any error was harmless, and he cannot otherwise appeal his standard range sentence. We further hold that remand is necessary to strike the VPA and reconsider restitution interest. Accordingly, we affirm and remand for the trail court to strike the VPA.

No. 58258-9-II

## FACTS

One afternoon, NS and his girlfriend returned home from the store for NS's sister's birthday party. Before they could enter the home, McClendon, who was 20 years old at the time, and another man approached them on the porch, pointed guns at them and demanded they give them "everything." Clerk's Paper (CP) at 2. NS's girlfriend dropped her phone and entered the home. NS fired shots at McClendon and his accomplice as they left the scene. Both assailants returned fire, two shots of which struck and killed NS on his porch.

The State originally charged McClendon with first degree murder, first degree robbery, and first degree unlawful possession of a firearm. In exchange for McClendon's guilty plea, the State amended the charges to one count of second degree murder with a firearm sentencing enhancement. The parties agreed that the State could argue for a sentence at the high end of the standard sentencing range and McClendon could argue for a sentence at the low end of the standard sentencing range.

At the sentencing hearing, the trial court recognized the heightened emotions of those in attendance.

> Folks, I understand this is very emotional. I understand the nature of what this is, but I need everyone to understand a couple of rules.
>
> First of all, there will be no outbursts, there will be no emotional anything other than when you're speaking to the Court. All of your comments are to be addressed to me, not to the defendant, and if there's any violations of the rules, I will deal with it accordingly. It's going to be very strict rules about what occurs in here.

Verbatim Rep. of Proc. (VRP) (Oct. 21, 2022) at 3. The trial court stated that it had read the presentence evaluation, McClendon's sentencing memorandum, all the letters from both the victim's and McClendon's family, and the declaration of probable cause.

2

In support of its argument that the trial court impose a high-end standard sentence, the State explained that it had considered McClendon's youthfulness in forming the plea agreement to reduced charges. The State also explained that McClendon's co-offender pleaded guilty months earlier than McClendon.

The trial court watched video footage of the incident and heard a statement from the victim's mother.

McClendon's counsel argued for a low-end standard sentence based on his youth at the time of the incident, his diagnosis of borderline intellectual functioning, and the fact that the victim fired shots first causing McClendon to fear for his life. McClendon's counsel explained that McClendon's youth and fear at being shot at were factors the court could consider to impose an exceptional downward sentence, but counsel reiterated that McClendon was only seeking a low end standard-range sentence. McClendon explained to the trial court that his co-offender was sentenced to 33 months above the low end of his standard sentencing range.

McClendon made a statement to the trial court. At the conclusion of his statement, the trial court acknowledged that McClendon had restraints on his hands.

> It appears the defendant has shackles. We did not do a *Lundstrom* hearing.
> . . . .
> Just for the record, I just noticed that as he was speaking. I in no way utilized that in any way against him, but for the record, I first need to establish whether or not counsel has any objection to him being shackled during this hearing or if counsel stipulates.

VRP (Oct. 21, 2022) at 31. McClendon's counsel responded, "It's a little late for that at this point. I was informed that due to the nature of this hearing that, unlike at his plea, that was not something I could request at this point." *Id.* The trial court then asked the transport deputy to establish the reasons for McClendon to be restrained. The deputy responded that because McClendon was

3

postconviction, there was no reason to not keep the restraints on him based on the jail's policies. The State noted that it was a murder case and postconviction and explained that it would defer to the trial court and jail staff on the issue.

The trial court reiterated that it did not know McClendon was shackled until he stood to make his statement, stating, "I will find it necessary for the security of this courtroom that he be shackled. There are a number of individuals present, and the nature of this particular charge will require a sentence well in excess of 15-plus years. As such, I do find it is necessary for that purpose." VRP (Oct. 21, 2022) at 33.

In issuing its sentence, the trial court explained that McClendon made a choice to enter a residential area, armed with a firearm, and engaged in a violent shootout where bullets entered a home and put innocent people at risk. The trial court explained,

> [W]hen the Court considers all those factors as well as the fact you were young, you were dealing with a number of mental health issues, and a number of other factors, the Court has to balance all that against the clear fact that there's a young man who is never going to go home to his family, and there's a family that is heartbroken behind you, and there's a family that is going to be dealing with this for the rest of their lives.

*Id.* at 37-38.

The trial court commented that RCW 9.94A.010 identifies the purposes of sentencing, and noted that the first purpose is to ensure that punishment is proportionate to the seriousness of the offense. The court noted the gravity of the crime at hand, explaining, "The reality of this case is you took a man's life. . . . a man's life was lost, which means there can be no more serious offense than what occurred on that day." VRP (Oct. 21, 2022) at 38. The trial court considered that the punishment is to be commensurate with that imposed in similar offenses and noted that

4

McClendon's co-offender received a sentence of 288 months. The trial court emphasized its duty to protect the public and to give McClendon an opportunity to improve himself.

Ultimately, the trial court imposed a sentence in the middle of the sentencing range for a total of 270 months confinement. McClendon appeals his sentence.

ANALYSIS

I. RESTRAINTS IN THE COURTROOM DURING SENTENCING

McClendon argues that his due process rights were violated when he was shackled at his sentencing hearing. We disagree.

We review a trial court's decision to restrain a criminal defendant for an abuse of discretion. *State v. Jackson*, 195 Wn.2d 841, 850, 467 P.3d 97 (2020). "A trial court abuses its discretion when its 'decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'" *Id*. (internal quotation marks omitted) (quoting *State v. Turner*, 143 Wn.2d 715, 724, 23 P.3d 499 (2001)).

"A defendant's right to appear in court free from unjustified restraints is well established as a matter of federal and state due process law." *State v. Luthi*, 3 Wn.3d 249, 256, 549 P.3d 712 (2024). "Restraints are viewed with disfavor because they may abridge important constitutional rights, including the presumption of innocence, privilege of testifying in one's own behalf, and right to consult with counsel during trial." *State v. Hartzog*, 96 Wn.2d 383, 398, 635 P.2d 694 (1981).

However, "the right to be free from restraint is not absolute, and trial court judges are vested with the discretion to determine measures that implicate courtroom security, including whether to restrain a defendant in some capacity in order to prevent injury." *Jackson*, 195 Wn.2d

at 852. Thus, before restraining a defendant, "[a] trial court must engage in an individualized inquiry into the use of restraints prior to every court appearance" and determine whether the restraints are necessary. *Id.* at 854; *see also Hartzog*, 96 Wn.2d at 400. The trial court should consider the following factors before ordering the use of restraints in the courtroom:

> "[T]he seriousness of the present charge against the defendant; defendant's temperament and character; [their] age and physical attributes; [their] past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies."

*Jackson*, 195 Wn.2d at 853 (internal quotation marks omitted) (quoting *State v. Hutchinson*, 135 Wn.2d 863, 887-88, 959 P.2d 1061 (1998)). There is no requirement that the trial court expressly address every factor. *Id.* at 855. A trial court abuses its discretion and commits constitutional error by requiring a defendant to be restrained without an individualized inquiry into its need. *Id.*

Here, the trial court realized McClendon wore wrist restraints when he stood up for his allocution. The trial court immediately recognized that it was required to make an individualized inquiry into the necessity for restraints. Upon consideration, the trial court ruled that restraints were necessary based on the gravity of the crime and the number of people in attendance at the hearing when it opined, "I will find it necessary for the security of this courtroom that he be shackled. There are a number of individuals present, and the nature of this particular charge will require a sentence well in excess of 15-plus years. As such, I do find it is necessary for that purpose." VRP (Oct. 21, 2022) at 33.

On appeal, McClendon argues that the trial court simply deferred to the jail policy and therefore abused its discretion. While it is true that both the State and the jail transport deputy

6

offered jail policy and McClendon's postconviction status as reasons for the restraints, the record does not support the contention that the trial court relied on the jail policy in its ruling. The trial court's ruling shows that it primarily based its decision on the seriousness of the charge, the size and mood of the audience, and the nature and physical security of the courtroom—all factors a trial court should consider under *Jackson*. 195 Wn.2d at 853.

The context of the entire sentencing hearing also supports the trial court's reasoning. At the outset of the hearing, the trial court admonished the courtroom that emotions must be kept under control. Multiple family members of both McClendon and the victim were present and the sentencing hearing was understandably emotionally charged. On this record, we hold that it was not manifestly unreasonable for the trial court to determine restraints were necessary.

Moreover, any error in restraining McClendon during sentencing was harmless beyond a reasonable doubt. "Restraints are viewed with disfavor because they may abridge important constitutional rights, including the presumption of innocence, privilege of testifying in one's own behalf, and right to consult with counsel during trial." *Hartzog*, 96 Wn.2d at 398. The Washington Supreme Court has also recognized "the unknown risks of prejudice from implicit bias and how it may impair decision-making." *Jackson*, 195 Wn.2d at 856. But here, McClendon alleges no interference with his rights to consult with counsel or speak to the trial court. Moreover, the trial court expressly stated on the record that it "in no way utilized [McClendon's restraints] in any way against him," showing that the trial court expressly called potential bias to the forefront, undermining the risk of unconscious bias. VRP (Oct. 21, 2022) at 32. Given this clear statement, and that the trial court proceeded to impose a mid-standard range sentence, we hold that any error in restraining McClendon was harmless beyond a reasonable doubt.

## II. STANDARD RANGE SENTENCE

McClendon argues that the trial court's reasoning when imposing a standard range sentence was contrary to the SRA and requires resentencing. We disagree.

Generally, sentences within the standard sentence range are not appealable. RCW 9.94A.585(1); *State v. Osman*, 157 Wn.2d 474, 481, 139 P.3d 334 (2006). The sentencing court has discretion to sentence a defendant within the sentence range, and so long as the sentence falls within the standard sentence range, there can be no abuse of discretion as to the sentence's length. Former RCW 9.94A.530(1)(2008); *State v. Williams*, 149 Wn.2d 143, 146-47, 65 P.3d 1214 (2003). A defendant may appeal a standard range sentence only if the sentencing court failed to comply with the procedural requirements of the SRA or constitutional requirements. *Osman*, 157 Wn.2d at 481-82.

McClendon contends that his standard range sentence is appealable because the sentencing court committed a procedural error by violating the real facts doctrine. The real facts doctrine, RCW 9.94A.530(2), provides in part, "In determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing, or proven pursuant to RCW 9.94A.537." RCW 9.94A.530(2) further states, "Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point."

But to be entitled to raise a real facts doctrine issue on appeal, McClendon must first show that he raised a "timely and specific objection" to the sentencing court's consideration of the allegedly improper information. *State v. Grayson*, 154 Wn.2d 333, 339, 111 P.3d 1183 (2005).

Moreover, defendants who receive a standard range sentence must object to unproven assertions of fact presented at sentencing to preserve error under the real facts doctrine. *State v. Mail*, 121 Wn.2d 707, 711-12, 854 P.2d 1042 (1993). McClendon fails to make this showing, and his argument therefore fails.

McClendon also contends that the trial court erred by misapplying the guidance of the SRA. Specifically, he argues that the trial court incorrectly stated that McClendon's crime could not have been a more serious crime, improperly weighed the circumstances of the crime, failed to consider psychological evidence showing McClendon was less culpable, and insufficiently considered McClendon's youth. But none of these alleged errors amounts to a procedural or constitutional defect in the trial court's sentencing decision.

Nor does McClendon's argument that the trial court failed to impose a sentence commensurate with his co-offender's sentence establish a procedural or constitutional error. RCW 9.94A.010(3) explains that one purpose of the SRA is to provide a system whereby courts impose sentences that are "commensurate with the punishment imposed on others committing similar offenses." However, RCW 9.94A.010(3) does not establish that co-offenders must receive identical sentences.

Here, McClendon's case was resolved separately from his co-offender, and the details of his co-offender's case are not before this court. McClendon fails to establish any error justifying review of his standard range sentence.

McClendon's arguments ultimately go to *how* the trial court weighed the circumstances of the case and used its discretion to determine the amount of time to be imposed within the standard range. McClendon was entitled to—and did—argue at sentencing that the trial court should impose

a low end sentence. That the trial court disagreed with McClendon's arguments and imposed a midrange-standard sentence, is not a procedural or constitutional defect permitting an appeal of a standard range sentence.

### III. LEGAL FINANCIAL OBLIGATIONS

McClendon also argues that the $500 crime victim penalty assessment must be stricken from his judgment and sentence and that the trial court should consider waiving the imposition of interest on his restitution. The State concedes, and we accept its concession.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the crime victim penalty assessment on indigent defendants as defined in RCW 10.01.160(3). *See* LAWS OF 2023, ch. 449, § 1(4); *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023), *review granted*, No. 102378-2 (Wash. Mar. 5, 2025). Additionally, a recent amendment to RCW 10.82.090 states that the trial court "may elect not to impose interest on any restitution the court orders" based on an inquiry into factors such as whether the defendant is indigent. RCW 10.82.090(2); LAWS OF 2022, ch. 260, § 12. Although these amendments took effect after McClendon's sentencing, they apply to cases pending on appeal. *Ellis*, 27 Wn. App. 2d at 16. We accept the State's concession that on remand, the trial court must strike the crime victim penalty assessment and it should consider whether to waive interest on restitution.

### CONCLUSION

We affirm McClendon's standard range sentence but remand to the trial court to strike the $500 crime victim penalty assessment and to consider waiving interest on restitution.

No. 58258-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

VELJACIC, A.C.J.

PRICE, J.