614

[No. 44652-9-II. Division Two. January 27, 2015.]

THE STATE OF WASHINGTON, *Appellant*, v. LELDON R. PITTMAN, *Respondent*.

*Jennifer M. Winkler* (of *Nielsen Broman & Koch PLLC*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney,* and *Jason Ruyf, Deputy,* for respondent.

¶1  BJORGEN, J. — Leldon R. Pittman appeals his convictions for attempting to elude a police vehicle and for driving under the influence of intoxicants. Pittman claims that the charging information omitted essential elements from the charge of attempting to elude a police vehicle and that the parties' exercise of their peremptory challenges on paper violated his right to a public trial. In a pro se statement of additional grounds, Pittman claims that his trial was untimely, requiring dismissal under CrR 3.3, and that he received ineffective assistance of counsel. We conclude in the published portion of this opinion that the charging information was adequate, and we address and reject Pittman's additional arguments in the unpublished portion. We affirm.

## FACTS

¶2  In January 2012, Pittman returned home after a night out and fought with his mother and stepfather. After Pittman

and his girlfriend drove off, his mother called 911 to report the altercation and gave a description of Pittman's car.

¶3 Police dispatch reported the incident as a vehicular assault involving a dark colored vehicle with a broken front windshield, and units from the Fife and Milton Police Departments responded. One of these units saw a car matching that description driving erratically away from the scene of the altercation. As the uniformed officer pulled behind the car to initiate a traffic stop, the car sped away. The car, later determined to be the one driven by Pittman, led officers on a chase at speeds between 30 and 80 mph. During this chase, the sirens and emergency lights of the police vehicles were in use.

¶4 The chase ended when Pittman's car crashed. As police officers approached the crashed vehicle, Pittman got out of it, saw the officers, and despite verbal commands that he stop, attempted to flee. Officers ultimately had to use a stun gun on Pittman to subdue him.

¶5 The State charged Pittman with, among other offenses, driving under the influence of alcohol in violation of RCW 46.61.502(1)(c) and attempting to elude a police vehicle in violation of RCW 46.61.024(1).[1] On the eluding charge, the information stated that

> Leldon Roy Pittman . . . did unlawfully, feloniously, and wil[l]fully fail or refuse to immediately bring his vehicle to a stop and drive his vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring his vehicle to a stop by a uniformed officer in a vehicle equipped with lights and sirens, contrary to RCW 46.61.024(1).

---

[1] RCW 46.61.024(1) provides that

[a]ny driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren.

Clerk's Papers (CP) at 12. The State alleged that while attempting to elude the police, Pittman endangered one or more persons other than himself or the pursuing officers, an aggravating circumstance for sentencing under RCW 9.94A.533(11).

¶6 After trial, the jury convicted Pittman of the driving under the influence and attempting to elude offenses. The jury also found that Pittman had endangered persons other than himself or the pursuing police when he attempted to elude a police vehicle, constituting the aggravating circumstance for sentencing.

¶7 Pittman timely appeals.

## ANALYSIS

### SUFFICIENCY OF THE CHARGING DOCUMENT

¶8 Pittman argues that the information omitted an essential element of the crime of attempting to elude a police officer. Specifically, he contends that the charging document omitted any mention that police signaled by hand, voice, emergency light, or siren that he should stop. We hold that the method by which police officers signal to stop is not an essential element of the crime of attempting to elude a police vehicle and that the information did not need to include this language.

¶9 An information is constitutionally defective if it fails to list the essential elements of a crime. *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013). The essential elements of a crime are those " 'whose specification is necessary to establish the very illegality of the behavior' charged."[2] *Zillyette*, 178 Wn.2d at 158 (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)).

---

[2] Essential elements required in an information may be imposed by statute or common law. *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991). Pittman's challenge here concerns statutory elements, since he claims that language found in RCW 46.61.024(1) creates an essential element.

Requiring the State to list the essential elements in the information protects the defendant's right to notice of the nature of the criminal accusation guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. *Zillyette*, 178 Wn.2d at 158. Due to the constitutional nature of the challenge to the sufficiency of an information, we review de novo claims that it omitted essential elements of a charged crime. *State v. Williams*, 133 Wn. App. 714, 717, 136 P.3d 792 (2006).

■ ¶10 In a challenge to the sufficiency of an information, we must first decide whether the allegedly missing element is, in fact, an essential element. *See State v. Tinker*, 155 Wn.2d 219, 220, 118 P.3d 885 (2005). If so, and where the defendant challenges, as here, the sufficiency of the information for the first time on appeal, we must then "liberally construe the language of the charging document in favor of validity." *Zillyette*, 178 Wn.2d at 161. Liberal construction requires that we determine whether "the necessary elements appear in any form, or by fair construction, on the face of the document and, if so," whether "the defendant [can] show he or she was actually prejudiced by the unartful language." *Zillyette*, 178 Wn.2d at 162 (citing *Kjorsvik*, 117 Wn.2d at 105-06).

¶11 The elements of the crime of attempting to elude a police vehicle are fixed in RCW 46.61.024(1), which states:

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

The information, set out above, omits any mention of making the signal by hand, voice, emergency light, or siren.

The issue, then, is whether making the signal by one of those four means is an essential element of the crime.

■ ■ ¶12 To make such a determination, we must engage in statutory interpretation. *Tinker*, 155 Wn.2d at 221; *State v. Caton*, 163 Wn. App. 659, 668, 260 P.3d 946 (2011), *rev'd on other grounds*, 174 Wn.2d 239, 273 P.3d 980 (2012). When interpreting a statute, we attempt to ascertain and give effect to the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We ascertain the legislature's intent using the plain meaning imparted by the text of the provision and that of any related provisions. *Campbell & Gwinn*, 146 Wn.2d at 11-12. Where a statute is susceptible of multiple reasonable interpretations after the plain meaning analysis, it is ambiguous, and we must turn to extrinsic evidence such as legislative history, common law precedent, or canons of construction to determine the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 12.

¶13 The first sentence of RCW 46.61.024(1), quoted above, plainly sets out essential elements of the crime: those elements that are necessary to establish illegality. *Zillyette*, 178 Wn.2d at 158. One of those elements is that the defendant must have been given a visual or audible signal to bring the vehicle to a stop. The second sentence then specifies further that the signal must have been given by "the police officer" and that it "may be by hand, voice, emergency light, or siren." RCW 46.61.024(1). The third sentence of RCW 46.61.024(1) adds to this by requiring that the officer giving the signal be in uniform.

¶14 The requirements in the second and third sentences that the signal be given by a police officer in uniform are also necessary to establish illegality and are thus essential elements under *Zillyette*. 178 Wn.2d at 158. The statement in the second sentence, though, that the police "may" signal "by hand, voice, emergency light, or siren," is not so easily characterized. RCW 46.61.024(1). "May" in this context could reasonably be read as requiring the police to use any

one of the four enumerated means of signaling to a defendant. RCW 46.61.024(1). The defendant would not act criminally unless he or she disregarded one of the specified signal types. However, as the State notes, the legislature's use of "may" in RCW 46.61.024(1) could also reasonably be read to permit, but not require, one of the enumerated types of signals. Under this reading of the statute, the manner in which police give the signal does not establish the criminality of the defendant's actions. Instead the State would need to prove only that the defendant disregarded some type of police signal to stop to show criminal behavior.[3] Under the former reading, the manner in which police signal would be an essential element of the crime. *Cf. Zillyette*, 178 Wn.2d at 160 (type of controlled substance is a necessary element where the delivery of only certain types of controlled substances can give rise to homicide by delivery charges). Under the latter reading, it would not be an essential element.

¶15 Under its plain meaning, then, RCW 46.61-.024(1) is susceptible of multiple reasonable interpretations and is therefore ambiguous. *Campbell & Gwinn*, 146 Wn.2d at 12. With that ambiguity, we must turn to legislative history, common law precedent, or canons of construction to determine the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 12. One of those canons states that we construe statutes in a manner avoiding absurd interpretations. *State v. Ortega*, 177 Wn.2d 116, 130, 297 P.3d 57 (2013). Closely related to this canon is the fundamental rule that we construe statutes to give effect to the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10.

¶16 The gravamen of the attempting to elude offense is that the defendant failed to stop when signaled to do so by police. Courts have recognized that this serves the legislature's goal of "prevent[ing] 'unreasonable conduct in

---

[3] The use of "may" in the second sentence and "shall" in the third does not resolve this dichotomy, since "may" logically could mean that the signal must be given by any one of the four listed means. RCW 46.61.024(1).

resisting law enforcement activities.' " *State v. Treat*, 109 Wn. App. 419, 426, 35 P.3d 1192 (2001) (quoting *State v. Hudson*, 85 Wn. App. 401, 403, 932 P.2d 714 (1997)). As the State points out, under Pittman's interpretation, defendants could freely ignore certain types of law enforcement signals such as whistles, flares, or written signs, thereby defeating the legislature's intent in enacting RCW 46.61.024(1).

¶17 Resolving an ambiguity by following an interpretation that so erodes transparent legislative intent creates a basic and unnecessary contradiction in the law. This dissonance both creates an absurdity under *Ortega*, 177 Wn.2d at 130, and ignores the basic injunction of statutory construction to give effect to legislative intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10. To avoid that absurdity and to honor that intent, RCW 46.61.024(1) must be interpreted to require that the police have reasonably signaled the defendant to stop, but not that they must have made that signal exclusively by hand, voice, emergency light, or siren. Therefore, the specific method by which the police made this signal is not an essential element of the crime of attempting to elude a police vehicle.

¶18 Pittman attempts to analogize the information in his case to the one found defective in *State v. Naillieux*, 158 Wn. App. 630, 241 P.3d 1280 (2010). In *Naillieux* the State alleged in the information that the defendant had driven

> "his[ ] vehicle in a manner indicating a wanton or willful disregard for the lives or property of others while attempting to elude a pursuing police vehicle appropriately marked after being given visual or audible signal by a uniformed police officer to bring his[ ] vehicle to a stop."

158 Wn. App. at 644 (quoting clerk's papers at 3-4). The language in the information in *Naillieux* tracked the language found in an older version of the attempting to elude statute. 158 Wn. App. at 644 (citing former RCW 41.61.024

(1983)). Legislative amendments had modified two elements found in the former statute before Naillieux's alleged criminal act.[4] Division Three of our court found that the use of the former statutory language in the information failed to provide notice of the essential elements of the crime of attempting to elude a police vehicle as it existed when Naillieux allegedly refused to stop. *Naillieux*, 158 Wn. App. at 644-45. *Naillieux*, therefore, simply stands for the rule that use of obsolete statutory language in an information may well miss current essential elements of an offense. It does not suggest that use of the phrase "visual or audible signal" overlooks an essential element of the offense.

¶19 The specific manner by which police signal someone to stop is not an essential element of the crime of attempting to elude a police vehicle. The information therefore did not omit an essential element of that crime.

¶20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MELNICK, J., concurs.

¶21 JOHANSON, C.J. (concurring) — I concur with the majority opinion in almost all aspects. My disagreement starts with the majority opinion where it declares RCW 46.61.024(1) ambiguous. Majority at 621. In my view, a plain reading of the statute is all that is necessary in order to determine that the charging document adequately informed Leldon R. Pittman of all essential elements of the felony eluding charge.

---

[4] First, the legislature had replaced the phrase " 'manner indicating a wanton or wilful disregard for the lives or property of others' " with the phrase " 'reckless manner.' " *Naillieux*, 158 Wn. App. at 644 (quoting Laws of 2003, ch. 101, § 1(1)). Second, the legislature had replaced the phrase " 'appropriately marked showing it to be an official police vehicle' " with the phrase " 'equipped with lights and sirens.' " *Naillieux*, 158 Wn. App. at 645 (quoting Laws of 2003, ch. 101, § 1(1)).

¶22 Where the defendant challenges the sufficiency of the charging document for the first time on appeal, we must then "liberally construe the language of the charging document in favor of validity." *State v. Zillyette*, 178 Wn.2d 153, 161, 307 P.3d 712 (2013). Liberal construction requires that we determine whether "the necessary elements appear in any form, or by fair construction, on the face of the document and, if so," whether "the defendant [can] show he or she was actually prejudiced by the unartful language." *Zillyette*, 178 Wn.2d at 162 (citing *State v. Kjorsvik*, 117 Wn.2d 93, 105-06, 812 P.2d 86 (1991)). A charging document must allege all essential elements. *Zillyette*, 178 Wn.2d at 158. An element qualifies as essential if it is required to establish the very illegality of the behavior. *Zillyette*, 178 Wn.2d at 158.

¶23 In my view, applying the required liberal construction in favor of validity, the "very illegality" of the felony elude behavior is established by the statutory language "fails or refuses to . . . stop . . . after being given a visual or audible signal to . . . stop." RCW 46.61.024(1). The next sentence, which the majority deems ambiguous, contains a permissive "may" and a nonexclusive list of the manner of giving the audible or visual signal to stop. The manner of giving the "stop" signal is plainly unnecessary to define the criminality of the offense. This language simply defines various ways an officer is permitted to give the audible or visual signal to stop. Liberal construction requires that we determine whether the necessary elements appear in any form or by fair construction. A plain reading of the statute allows us to simply answer yes; Pittman was informed of all essential elements of felony eluding when he was charged with "fail[ing] or refus[ing] to . . . stop . . . after being given a visual or audible signal to . . . stop." Clerk's Papers at 12. I would hold that RCW 46.61.024(1) is unambiguous and that the charging document was sufficient.

Review denied at 184 Wn.2d 1021 (2015).