IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

               Respondent,

        v.

BRYAN JACK CROW,

               Appellant.

No. 87080-7-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, A.C.J. — Bryan Crow was found guilty of assault in the first degree with a firearm enhancement and two counts of unlawful possession of a firearm in the first degree. He asserts that there was insufficient evidence to sustain one of the unlawful possession of a firearm charges and the court lacked authority to impose a community custody condition requiring a substance abuse evaluation and treatment. In a pro se statement of additional grounds for review, Crow further avers that his trial counsel was ineffective. We remand to strike the community custody condition, but otherwise affirm.

FACTS

Orlando Dickie was shot early in the morning on January 1, 2022 at a motel in Tacoma, Washington, where he was a resident and employee who worked the front desk. On December 31, 2021, his shift ended at 9:00 p.m. when his replacement, Louisa Falanruw, arrived to take over. Around that time a man and a woman checked into the motel and, while the man did not provide identification

when the woman registered for the room, he had a memorable face tattoo. Dickie left the front desk to spend time with two of his neighbors and celebrate the new year. Dickie returned to his own room at around five or six o'clock in the morning and later stepped outside onto the balcony for some fresh air. He heard an argument in the parking lot between a man and a woman. Dickie believed it was the couple who he had observed checking in earlier. Dickie spoke to Crow while still outside his room and later said he felt like he was being "cornered." He briefly entered his room, but then came back out onto the balcony where he spoke to Crow again. Crow was standing in the doorway of his own room and then went inside briefly before returning to the doorway. The "unfriendly" exchange continued once Crow returned to the balcony. Crow then opened fire and struck Dickie several times.

Falanruw heard the shots and observed a man and a woman run to a car in the parking lot and drive away. Falanruw called 911 and officers from the Tacoma Police Department (TPD) responded to the motel. A guest had noted the license plate of the car leaving the scene, which was later determined to be registered to Angela Garcia. Department of Licensing records indicated that Crow had given the same address as Garcia's vehicle registration for a state identification (ID) card he had obtained.

Six cartridge casings were recovered from the scene and tested by a forensic scientist with the Washington State Patrol Crime Laboratory (WSP Crime Lab); five of the casings were determined to have been fired from the same weapon. A number of items were collected from Crow's room, including his college

ID and address book, various documents, a box of ammunition containing live 9 mm rounds, and makeup pallets. Later, latent fingerprints were lifted from the ammunition tray and subsequent testing determined that they belonged to Crow. Fingerprints lifted from the makeup pallets and the car were later linked to Reina Bustillo Sanchez, who had checked into the motel alongside Crow. Both of their fingerprints were found in the car registered to Garcia that had been observed leaving the scene.

On May 4, 2022, Detectives Dean Gaddis and Edgar Salazar of the Moses Lake Police Department, accompanied by U.S. Marshals, identified Crow in the parking lot of a motel in Moses Lake. At trial, Gaddis and Salazar testified that they first observed Crow next to the driver side door of a black Honda Civic and it "looked like he was getting in the floorboard of the driver's side." Gaddis saw Crow walk to the trunk of the car and, after about ten minutes of surveillance and planning, Gaddis, Salazar and the marshals moved to arrest Crow. Crow was between the black Honda and another car when he was apprehended by law enforcement. After the arrest, Gaddis observed a firearm on the floorboard of the black Honda officers had seen Crow going in and out of during their surveillance. A warrant was obtained to search the vehicle, which resulted in the seizure of a Social Security card with the name Don Crow and the firearm, a 9 mm. At trial, a forensic scientist from the WSP Crime Lab testified that the firearm recovered from the Honda was not the same firearm that was used in the Dickie shooting.

On March 10, 2022, the State charged Crow with one count of attempted murder in the first degree and one count of assault in the second degree, both with

firearm enhancements, and unlawful possession of a firearm in the first degree (UPFA1) based on the incident at the Tacoma motel. On August 23, the State amended the information to add a second count of UPFA1 for the firearm discovered pursuant to his arrest in Moses Lake. At trial, Crow stipulated to the prior disqualifying conviction for a serious offense for the purpose of the UPFA1 charges. The jury was instructed that "a person commits the crime of unlawful possession of a firearm in the first degree when he has previously been convicted of a serious offense and knowingly owns or has in his possession or control any firearm." They were further instructed that

> [p]ossession means having a firearm in one's custody or control. It may either be actual or constructive. . . . Constructive possession occurs when there is no actual physical possession but there is dominion and control over the item.
> Proximity alone without proof of dominion and control is insufficient to establish constructive possession."

The jury acquitted Crow of attempted murder in the first degree, but found him guilty of attempted murder in the second degree as a lesser included offense and found by special verdict that he was armed with a firearm during the commission of that crime. He was also found guilty of assault in the first degree, again with a special verdict finding that he was armed with a firearm during the commission of the offense. The jury further found Crow guilty on both counts of UPFA1. After the jury's finding of guilt, the State moved to vacate the conviction for murder in the second degree based on double jeopardy and the court granted the motion. The court imposed a near high end total period of confinement of 420 months, which included mandatory consecutive time for the firearm enhancements, followed by 36 months of community custody.

- 4 -

Crow timely appealed.

ANALYSIS

I.    Sufficiency of the Evidence

Crow avers that there was insufficient evidence to establish beyond a reasonable doubt that he committed count 4, the UPFA1 charge stemming from his arrest in May 2022 at the Moses Lake motel, because the State did not prove that he had dominion and control over the vehicle where the weapon was found. He concedes that his prior conviction provides one of the essential elements of the crime.

In reply, the State asserts that this contention fails because the firearm was found in a vehicle over which Crow had exclusive control, noting that the firearm "was within his reach, in plain sight, on the driver's side floorboard of a vehicle he had exclusive control over for over 10 minutes." The State further contends Crow had the ability "to reduce the firearm to his physical possession." Thus, the State urges us to conclude there was sufficient evidence for his conviction.

Our review considers "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *see also State v. Johnson*, 188 Wn.2d 742, 762, 399 P.3d 507 (2017). RCW 9.41.040(1)(a) provides the essential elements of UPFA1 as follows:

A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, accesses, has in the person's custody, control, or possession, or receives any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense.

"Possession may be actual or constructive." *State v. Raleigh,* 157 Wn. App 728, 737, 283 P.3d 1211 (2010). "The State may establish constructive possession by showing the defendant had dominion and control over the firearm." *State v. Chouinard*, 169 Wn. App. 895, 899, 282 P.3d 117 (2012). We consider the totality of the circumstances in making this determination. *State v. Ibarra-Erives,* 23 Wn. App. 2d 596, 602, 516 P.3d 1246 (2022), *review denied*, 200 Wn.2d 1028 (2023). Proximity alone is not enough to establish possession. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). "But the ability to reduce an object to actual possession is an aspect of dominion and control." *State v. Turner*, 103 Wn. App. 515, 521, 13 P.3d 234 (2000). "Courts have found sufficient evidence of constructive possession, and dominion and control, in cases in which the defendant was . . . the driver/owner of the vehicle where the contraband was found." *Chouinard*, 169 Wn. App at 899 (collecting cases).

Because Crow stipulated to one of the essential elements, his prior conviction for a serious offense that renders him ineligible to possess a firearm, the jury only needed to consider possession of the firearm found in the black Honda at the Moses Lake motel in May 2022. The firearm was not on Crow's person, so the conviction was premised on a theory of constructive possession and the jury's conclusion was that the State proved beyond a reasonable doubt that Crow had dominion and control over the firearm.

Crow relies on two cases in support of this assignment of error, *State v. McCaughey*[1] and *State v. George*,[2] but they are distinct from the facts present here. In both *McCaughey* and *George*, there was more than one individual present at the time the defendant was apprehended, making it difficult to conclusively link the contraband to one specific person. Here, Crow was the only person observed accessing the vehicle, and the only one present when the arrest occurred and the contraband was discovered.

Without more, this fact of access or presence would be insufficient as proximity alone is not enough, but there are other facts indicative of dominion and control. Crow was observed accessing the floorboard area on the driver's side of the black Honda, where the firearm was later recovered. Crow was also observed accessing the trunk of the same vehicle. Later, a number of items were seized pursuant to the search warrant or incident to arrest including, a cellphone, keys, and the Social Security card with the name Don Crow. It is unclear if the recovered keys were to the black Honda. Of the two cellphones recovered that day, one was found on the woman accompanying Crow, so it could be reasonably inferred that the phone found in the black Honda belonged to Crow. Although there was another car in the parking lot associated with Crow and Bustillo Sanchez, the Social Security card, presumably belonging to a relative of Crow, suggests that he was the driver of that vehicle. The firearm recovered from the car was a 9 mm, as was the one used in the shooting at the Tacoma motel, although forensics later showed it was not the firearm used in that shooting. All of these facts taken together,

_____

[1] 14 Wn. App. 326, 541 P.2d 998 (1975).
[2] 146 Wn. App. 906, 193 P.3d 693 (2008).

viewed in the light most favorable to the State, suggest that Crow was in possession of the vehicle where the firearm was recovered, and that Crow could have easily reduced the firearm to his possession, which would be sufficient to find constructive possession.

No single fact here is dispositive, but considering the totality of circumstances, there was sufficient evidence for a jury to conclude that Crow possessed the firearm at the time of apprehension. Thus, we affirm Crow's conviction on count 4.

## II. Community Custody Conditions

Crow next assigns error the imposition of a community custody condition that ordered him "to undergo an evaluation for treatment for substance abuse and to fully comply with all recommended treatment" because, he avers, "there [was] no evidence that substance use [was] related to or contributed to Crow's offenses." Crow further alleges that unless the sentencing court based the imposition of this condition on evidence that substance use contributed to the offense, it exceeds the court's authority. In reply, the State asks us to decline to review this claim because Crow did not make a timely objection to imposition of the condition and the condition does not implicate a constitutional right. The State is incorrect on this point and does not engage with the aspect of Crow's challenge that asserts the finding on which the condition is premised is not supported by the record. We reach the merits of Crow's challenge.

An unlawful sentence may be challenged for the first time on appeal. *State v. Mercado*, 181 Wn. App. 624, 632, 326 P.3d 154 (2014). "A sentencing court

may impose custody conditions only as authorized by statute." *State v. Charlton*, 23 Wn. App. 2d 150, 169, 515 P.3d 537 (2022), *aff'd*, 2 Wn.3d 421, 538 P.3d 1289 (2023). We consider the statutory authority underlying the application of community custody conditions de novo. *State v. Kolesnik*, 146 Wn. App. 790, 806, 192 P.3d 937 (2008). "'[B]ecause the imposition of crime-related prohibitions is necessarily fact-specific and based upon the sentencing judge's in-person appraisal of the trial and the offender, the appropriate standard of review [is] abuse of discretion.'" *State v. Phillips*, 6 Wn. App. 2d 651, 674-75, 431 P.3d 1056 (2018) (alterations in original) (quoting *In re Pers. Restraint of Rainey,* 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010)).

The challenged condition requires Crow to "undergo an evaluation for substance abuse." Although the judgment and sentence (J&S) does not specify, Crow's briefing rests this claim on his presumption that this condition was imposed pursuant to RCW 9.94A.703. That statute authorizes a sentencing court to, among other things, impose discretionary conditions that are either direct requirements for treatment or conditions supportive of treatment, or "crime-related." RCW 9.94A.703(3)(c)-(f). The J&S includes a handwritten finding that "drugs and alcohol played a role in [the] offense based on testimony at trial." Crow avers that this finding is inaccurate and unsupported by the trial testimony. This court reviews findings of fact for substantial evidence. Unchallenged facts are verities on appeal, but "when the sufficiency of the evidence is challenged the appellate court must still determine whether the unchallenged findings of fact support the trial court's conclusions of law." *State v. Rodgers,* 146 Wn.2d 55, 61, 43 P.3d 1 (2002).

Careful review of the trial transcript finds minimal evidence of Crow's drug use and little to explain how it relates to the circumstances of the offense. The only reference at trial came from Christine Doan, a forensic services supervisor with TPD, who noted that "a gold spoon or spatula" was submitted for analysis and later referred to "suspected drug paraphernalia" that was recovered from the motel room that Crow had checked into in Tacoma. But, the suspected paraphernalia Doan discussed was not linked to Crow exclusively; he was not the sole occupant of the room from which it was recovered. At sentencing, defense counsel stated that Crow started drinking alcohol as a child and began using methamphetamine after his sister had passed away from an overdose in 2021. However, counsel did not suggest that Crow was under the influence of drugs or alcohol at the time of the offense. Neither of these statements establish that Crow's history of substance use was related to the crime for which he was convicted, nor do they support the court's finding that "drugs and alcohol played a role in [the] offense based on testimony at trial," particularly as the only relevant trial testimony was Doan's passing mention of suspected drug paraphernalia. The court's finding is not supported by substantial evidence and, in turn, does not support the requirement to obtain a substance abuse evaluation. We remand for the trial court to strike this condition from the J&S.

III.     Ineffective Assistance of Counsel

In his pro se statement of additional grounds for review (SAG), Crow alleges that his counsel was ineffective and, for that reason, he is entitled to a new trial. He asserts that his trial counsel did not call Bustillo Sanchez as a witness at trial,

did not interview all of the people on the State's witness list, and failed to interview two key witnesses prior to trial, Dickie and Falanruw. Crow further contends that his counsel should have pursued a CrR 3.6 motion to exclude the "identity card" found at the Tacoma motel near the scene of the assault. Finally, he avers that the UPFA1 charge from May 2022 in count 4 should have been severed from the charges stemming from the incident at the Tacoma motel in January 2022.

We review claims of ineffective assistance of counsel de novo. *State v. Grott*, 195 Wn.2d 256, 274, 458 P.3d 750 (2020). To prevail, "the defendant the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 446 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to establish either deficient performance or prejudice is fatal to a claim of ineffective assistance of counsel. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012). Trial counsel was deficient if their performance "fell below an objective standard of reasonableness based on the consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "There is a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). If the alleged deficiency could be "characterized as legitimate trial strategy," the panel "may not find deficient performance." *State v. Pittman*, 185 Wn. App 614, 623, 341 P.3d 1024 (2015). This presumption can be rebutted by "demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach,* 153 Wn.2d 126, 130,

101 P.3d 80 (2004)). Where the claim of ineffective assistance is premised on failure to file a particular motion, the appellant must additionally demonstrate that the motion would have been granted in order to establish prejudice. *See McFarland*, 127 Wn.2d at 333-34; *Emery*, 174 Wn.2d at 755.

### A. Strategic Decisions about Witnesses

Counsel has broad discretion to make strategic decisions about how to try a case. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 733-34, 16 P.3d 1 (2001). In order to be effective, counsel "must investigate the case, and investigation includes witness interviews." *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015). A defendant alleging that counsel failed to conduct an adequate investigation "must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 739, 101 P.3d 1 (2004). Counsel's expansive discretion in this regard includes how to prepare for trial and which witnesses to call. *Stenson*, 142 Wn.2d at 741. "Generally the decision whether to call a particular witness is a matter of differences of opinion and therefore presumed to be a matter of legitimate trial tactics." *Davis*, 152 Wn.2d at 742.

Crow asserts that both Dickie and Falanruw made inconsistent statements to police and their credibility could have been undermined if they had been interviewed by counsel. However, the record establishes that defense counsel rigorously cross-examined both Dickie and Falanruw on their conflicting statements and the accuracy of their respective memories. Crow does not identify the additional information that would have resulted from interviews of these

witnesses or how it would have strengthened their cross-examination at trial. Nor does he provide argument explaining what testimony Bustillo Sanchez would have provided at trial and how he was prejudiced without it. Because he fails to establish deficient performance as to witness interviews or witnesses called at trial, we need not consider prejudice.

B. Motion To Sever

Finally, Crow contends that trial counsel was ineffective for not filing a motion to sever the UPFA1 charge in count 4, stemming from his arrest in Moses Lake in May 2022, from the rest of his charges generally, but most particularly the UPFA1 charge in count 3 from the January 2022 shooting in Tacoma. He avers that he was prejudiced at trial because proceeding with the two firearm charges together allowed the jury to hear evidence linking him to the 9 mm firearm found in Moses Lake and the 9 mm ammunition found in the motel room in Tacoma, because it made the evidence behind each charge more prejudicial than if the two counts had been tried separately. Again, where a claim of ineffective assistance of counsel rests on an assertion that counsel failed to file a particular motion, the appellant must demonstrate that the motion would have been granted in order to establish deficient performance. *McFarland*, 127 Wn.2d at 333-34. Crow makes no such showing here and, as such, this challenge fails.[3]

---

[3] The same analysis applies to Crow's claim of ineffective assistance based on defense counsel's failure to move to suppress his college ID card and the 9 mm ammunition found at the scene of the shooting. He fails to engage in the proper standard to establish why the motion to suppress would have been granted. Accordingly, that challenge also fails.

We affirm in part, reverse in part, and remand to strike the community custody condition.

_____
Hazel, ACJ

WE CONCUR:

_____        _____
Smith, C.J.                                      Mann, J.