# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49218-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JEFFERY ALLEN BOATRIGHT, | |
| Appellant. | |

BJORGEN, C.J. — Jeffery Boatright appeals his conviction of felony vehicle prowling in the second degree. Boatright argues that by requiring him to wear a leg brace restraint, the trial court deprived him of (1) his right to due process, (2) his right to testify under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and article I, section 22 of the Washington Constitution, (3) his right to counsel under the Sixth and Fourteenth Amendments, and (4) the presumption of innocence. He also objects to appellate costs and raises additional contentions in his statement of additional grounds (SAG).

We hold that the trial court abused its discretion when it required Boatright to wear a leg brace restraint because the circumstances were not extraordinary as required by governing case law. Nevertheless, the error was harmless because there was not a substantial or injurious effect or influence on the jury's verdict. Additionally, we decline to reach the issue of appellate costs and deem the SAG claims meritless. Accordingly, we affirm.

## FACTS

In the early morning of January 17, 2015, Philip Kelley woke in his home and noticed an unexpected light in one of his vehicles parked in his driveway. Someone was methodically

moving through the vehicle.  Because Kelley did not know the person, he contacted 911 and reported the suspected vehicle prowler.  When the suspect exited the vehicle, Kelley provided a description to the 911 operator.  Kelley described the suspect's distinctive clothes (i.e., "slick" sweatpants, a blue coat with white trim, and a baseball cap) and informed the 911 operator that the suspect had a computer bag in his possession.  Verbatim Report of Proceedings (VRP) (June 28, 2016) at 177-79.

At that point, the suspect left the property, and Kelley followed him.  Kelley observed the suspect enter his neighbor Greg Hilchey's vehicle and begin working through it in the same manner as his own.  After the suspect had finished searching that neighbor's vehicle, the suspect moved to his neighbor Thomas Beardsley's vehicle in an adjacent driveway.

Officer Jeffrey Davis, a police officer with the city of Olympia, and Deputy Tyson Shenkel, with the Thurston County Sheriff's Department, simultaneously arrived on scene.  As both officers approached the area on foot, they observed a man walk out into the street.  Officer Davis observed that the man "appeared to pause and crouch down as to make their stature a little bit smaller, and almost as if [he was] in a panicked manner like [he was] pausing."  VRP (June 27, 2016) at 52.  When the police identified themselves and ordered the suspect to stop, the suspect began to run.  The officers pursued the suspect on foot, and Officer Davis found him hiding partially underneath a parked vehicle with a computer bag within arm's reach.  The man identified himself as Boatright.

Officer Davis took note of Boatright's clothing, which matched Kelley's description.  The bag in Boatright's possession was found to contain not only Kelley's property, but also the property of Kelley's neighbors.  One neighbor, Hilchey, advised Officer Davis that he owned the

laptop and computer bag in Boatright's possession, which was returned to him. The other

property was taken as evidence. Kelley also identified Boatright at the scene as the man who

was in Kelley's vehicle.

The State charged Boatright with felony vehicle prowling in the second degree. On June

27, 2016, the morning of trial, the State moved to allow the use of a leg brace restraint on

Boatright during the trial. After hearing from counsel, the trial court concluded as follows:

> As the attorneys have both indicated, it's the State's burden to show that restraints are appropriately imposed on a defendant during the course of trial. The presumption is that restraints will not be imposed and that a defendant has the right to be free of restraints in the courtroom during a trial. The court by case law is required to take a look and balance that right of the defendant with other factors the court has to consider in maintaining not just the dignity and the efficiency of the proceedings but the safety of the people in the courtroom. Mr. Powers [State] I think rightly noted that the courtroom here is pretty small. The – all the courtrooms, frankly, except for one in this building, are pretty small, but in this particular courtroom the setup where the defendant is sitting right now is closest to the jury box. It's very close to where the jury is going to be sitting as a pool during *voir dire*.
> Mr. Boatright has a long history of criminal convictions. Significantly [sic] to the court is a pattern, and I do believe it's a pattern as Mr. Powers just outlined, of failure to comply with the court's orders, which gives the court concern about how he may or may not be behaving in the courtroom. Additionally, if convicted, Mr. Boatright is facing a lengthy prison sentence, and it's a sentence that the court has no discretion about imposing. Given his history, if he's convicted the sentence will be 60 months in custody.
> The proposal for the restraints at issue are very minimal. The State has attached to its memorandum Appendix A[1] that shows what the restraint is. It's

---

[1] Appendix A provides the seller's product description of the leg brace restraint as follows:
> A unique alternative worn inside or outside of the defendant's pants. The mechanical leg restraint uses three nylon straps with velcro which secure around the defendant's leg and one leather strap that locks at the individual's ankle. There is a me[t]al bar that hinges at the defendant's knee which can be operated by the defendant for full range of motion. Allows a restrained person to sit or walk but impedes their running or kicking ability.
> The mechanical leg restraint is the least restrictive of all routine devices (i.e. handcuffs, shackles, bandit). It causes no injury to the defendant and little or no

on one leg, and it is on Mr. Boatright at this time. I just want to indicate for the record I haven't been able to see it. I don't see it now. I did notice that Mr. Boatright walked a little slowly when he came out of the jury box to have a seat with Mr. Shackleton at counsel table, and I can assure everybody that the court will not be allowing the jury or the pool to watch Mr. Boatright walk. He will not be moving in front of them at the trial.

The court is mindful that Mr. Boatright needs to be able to be in good communication with Mr. Shackleton. If at any time, Mr. Boatright or Mr. Shackleton, you feel that there's an issue, if you could just let the court know that you'd like to take a recess, we can reassess things, but given everything I'm supposed to balance at this time I'm finding that the State has made a sufficient showing for the limited restraints that it's requesting, and I'm going to grant the request.

VRP (June 27, 2016) at 16-18.

The jury found Boatright guilty of felony vehicle prowling in the second degree. At sentencing, the court imposed a mandatory 60 month sentence.

Boatright appeals.

ANALYSIS

I. RESTRAINT

Boatright argues that the trial court's imposition of a leg brace restraint violated his constitutional rights to due process, assistance of counsel, testifying, and to the presumption of innocence.[2] He argues these were prejudicial errors requiring reversal of his conviction and remanding for a new trial. We agree that the trial court erred in requiring a leg brace restraint,

---

discomfort. The mechanical leg restraint is virtually undetectable and le[ss] prejudicial than manning the courtroom with additional deputies for security.
Clerk's Papers (CP) at 11.

[2] Boatwright's opening brief does not differentiate among these constitutional doctrines or argue specifically from any of them. Our analysis, accordingly, does not individually address each of these constitutional sources.

but conclude the error was harmless because Boatright failed to demonstrate that the restraint had a substantial or injurious effect or influence on the jury's verdict.

A.      Standard of Review

Generally, we review constitutional issues de novo. *State v. Samalia*, 186 Wn.2d 262, 269, 375 P.3d 1082 (2016). However, we review a superior court's decision to impose restraints at trial for an abuse of discretion. *State v. Turner*, 143 Wn.2d 715, 724-25, 23 P.3d 499 (2001); *State v. Hartzog*, 96 Wn.2d 383, 400-01, 635 P.2d 694 (1981).

The case law makes clear, though, that not every question relating to the ordering of restraints is reviewed for an abuse of discretion. The issue in *Turner* was whether the superior court erred by failing to hold a hearing prior to requiring restraints. *Turner*, 143 Wn.2d at 724. The *Turner* court recited the rule that it reviews "'the trial court's decision to shackle a defendant under an abuse of discretion standard,'" but ultimately held that a hearing was not required because it would have been redundant in this case. *Id.* at 724, 727 (quoting *State v. Breedlove*, 79 Wn. App. 101, 113, 900 P.2d 586 (1995)). *Turner* then held that the trial court did not abuse its discretion in imposing restraints under the facts already set forth in the record. *Id.* The *Turner* court thus did not apply the abuse of discretion standard in deciding the hearing would be redundant, but did apply that standard in reviewing the trial court's decision whether a leg brace restraint should be imposed on the facts before it. *Id.* at 725.

In *Hartzog*, the Supreme Court held that a "broad general policy of imposing physical restraints upon prison inmates charged with new offenses because they may be potentially dangerous is a failure to exercise discretion." *Hartzog*, 96 Wn.2d at 400 (internal quotations marks omitted). The court did not apply an abuse of discretion standard in reaching this

conclusion. On the other hand, *Hartzog* held that the decision as to what security measures are appropriate is "within the inherent power and discretion of the trial judge." *Id.* at 401. Under *Hartzog*, as well as *Turner*, it is the trial court's consideration and balancing of the evidence in deciding whether to require restraints that is reviewed for abuse of discretion. Those decisions do not extend that standard to corollary legal issues.

Boatright's challenge is to the validity of the trial court's decision to require him to wear a leg brace restraint at trial. Thus, under *Turner* and *Hartzog*, we review that decision for an abuse of discretion. A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *Turner*, 143 Wn.2d at 724. "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

B.      Legal Principles

Turning now to the substantive standards, "'[i]t is fundamental that a trial court is vested with the discretion to provide for courtroom security, in order to ensure the safety of court officers, parties, and the public.'" *Turner*, 143 Wn.2d at 725 (quoting *Hartzog*, 96 Wn.2d at 396). At the same time, "[i]t is well settled that a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances." *State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967 (1999); *accord*, *State v. E.J.Y.*, 113 Wn. App. 940, 951, 55 P.3d 673 (2002). This rule ensures that "the defendant receives a fair and impartial trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and

6

article I, section 22 (amendment 10) of the Washington State Constitution." *Finch*, 137 Wn.2d at 843.

Washington courts have "universally held that restraints should 'be used only when necessary to prevent injury to those in the courtroom, to prevent disorderly conduct at trial, or to prevent an escape.'" *Finch*, 137 Wn.2d at 846 (quoting *Hartzog*, 96 Wn.2d at 398). Restraints are disfavored because "'they may abridge important constitutional rights [such as], . . . the presumption of innocence, privilege of testifying in one's own behalf, and [the] right to consult with [and assist] counsel during trial.'" *Turner*, 143 Wn.2d at 725 (quoting *Hartzog*, 96 Wn.2d at 398); *Finch*, 137 Wn.2d at 845. By keeping the defendant in restraints, the court might deprive him of the full use of all his faculties. *State v. Damon*, 144 Wn.2d 686, 691, 25 P.3d 418 (2001).

Only after conducting a hearing and entering sufficient findings into the record may a trial court allow the use of restraints. *Damon*, 144 Wn.2d at 691-92. The court must also consider less restrictive alternatives. *Finch*, 137 Wn.2d at 850. The trial court's discretion in ordering courtroom security measures must be founded upon a factual basis set forth in the record. *E.J.Y.*, 113 Wn. App. at 951. The trial court abuses its discretion unless its decision rests on evidence that indicates the defendant poses an imminent risk of escape, the defendant intends to injure someone in the courtroom, or the defendant cannot behave in an orderly manner while in the courtroom. *Finch*, 137 Wn.2d at 850.

A trial court may consider several factors, among other matters, when deciding whether a defendant should be restrained during trial. The court gave as examples

> "the seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past

7

escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies."

*Hartzog,* 96 Wn.2d at 400 (quoting *State v. Tolley*, 290 N.C. 349, 368, 226 S.E.2d 353 (1976)).

C.      Imposition of Restraint

The trial court conducted a hearing on the plaintiff's motion to impose restraint and addressed many of the *Hartzog* factors.  These included the seriousness of the present charge against the defendant, the defendant's temperament and character, his past record, and the nature and physical security of the courtroom.  Although the trial court did not address every *Hartzog* factor, some factors appear inapposite (e.g., self-destructive tendencies, the risk of mob violence, attempted revenge, and the possibility of rescue).  The trial court did not expressly address past escapes or attempted escapes or evidence of a plan to escape, although counsel did touch on the risk of escape in argument.  The court also did not address Boatright's age and physical attributes, although these would have been apparent, and did not address the presence of threats to harm others or cause a disturbance.

The trial court exercised its discretion with respect to the types of restraint Boatright would wear, and with respect to whether he should wear them at all.  The trial judge noted that the leg brace restraint was "very minimal," and confirmed that it was not visible to the jury and that neither the jury pool nor the jury would be allowed to see Boatright walk.  VRP (June 27, 2016) at 17.

Boatright contends that he was entitled to attend the trial free from restraint because there was no "impelling necessity" for physical restraints.  Br. of Appellant at 5.  However, the trial

court deemed the restraint necessary for several reasons. First, it observed the courtroom's small size and the proximity of Boatright's seat to the jury box. Second, it noted that Boatright had a long history of criminal convictions, which included a pattern of disregard for prior court orders. Third, it recognized that Boatright was facing a lengthy, five-year, mandatory prison sentence. Fourth, the trial court recognized that the leg brace restraint in question was minimally intrusive and, by reference to Appendix A of the State's memorandum, the least restrictive of all routine devices. Fifth, the court noted that it had not been able to see the restraint, though it did notice a slight impact on Boatright's mobility. Because of the impact on Boatright's mobility, the court advised that it would not allow the jury to observe Boatright walk in the courtroom. Finally, the court took precautions insofar as it advised the parties it would allow a recess if the restraint impeded Boatright's ability to effectively communicate with counsel.

Notwithstanding the trial court's pains to properly analyze whether to impose a leg brace restraint and to mitigate any prejudice that could result, the record does not indicate that Boatright was a threat to "'the safety of court officers, parties, and the public.'" *See Turner*, 143 Wn.2d at 725 (quoting *Hartzog*, 96 Wn.2d at 396). There is no evidence in the record that Boatright had threatened or attempted to injure anyone in the courtroom, behaved disorderly, or tried to escape, considerations directed by *Finch*, 137 Wn.2d at 846. Moreover, his criminal history does not provide an adequate basis for the requirement of restraint. The court relied on the prosecutor's reference to a juvenile conviction for attempting to elude, a sex offense, a community custody violation, and four convictions for failure to register. None of these convictions, though, suggest he was a threat to escape or a threat to the safety of the court, the parties, or the public for the purposes of conducting trial.

In addition, even though the leg brace restraint may be the least restrictive mechanical device, there are alternatives to the imposition of physical restraints. For example, if the trial judge was concerned about Boatright's courtroom behavior or proximity to the jury, she could have discreetly called in another deputy to monitor him. While it could be argued that an unseen leg brace restraint is less prejudicial than staffing the courtroom with additional deputies, the imposition of restraint requires extraordinary circumstances, which the record shows were not present.

As noted, a defendant in a criminal case "is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances." *Finch*, 137 Wn.2d at 842. Restraints should be used only when necessary to prevent injury to those in the courtroom, to prevent disorderly conduct at trial, or to prevent an escape. *Id.* at 846. The record does not contain evidence of any of these circumstances. Therefore, we conclude that the trial court abused its discretion when it ordered Boatright to wear a leg brace restraint because extraordinary circumstances warranting its imposition were not present.

D.     Harmless Error

Although the trial court abused its discretion by imposing a leg brace restraint, "[a] claim of unconstitutional shackling is subject to harmless error analysis." *State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998). "In order to succeed on his claim, the Defendant must show the shackling had a substantial or injurious effect or influence on the jury's verdict." *Id.* at 888. "This requires evidence that the jury saw the restraints or that the restraints substantially impaired the defendant's ability to assist in his trial defense." *State v. Monschke*, 133 Wn. App. 313, 336, 135 P.3d 966 (2006).

Although Boatright contends that the jury may have seen the restraint, there is no evidence in the record that the jury saw or could see the restraint during trial. Since the jury never saw Boatright in restraint, he cannot show prejudice. *See Hutchinson*, 135 Wn.2d at 888, holding that "[b]ecause the jury never saw the Defendant in shackles, he cannot show prejudice." In addition, there is no evidence that the restraint substantially impaired his ability to assist in his trial defense. The trial court advised Boatright "[i]f at any time . . . you feel that there's an issue, if you could just let the court know that you'd like to take a recess, we can reassess things." VRP (June 27, 2016) at 18. Boatright never advised the trial court that there was such an issue, and we can find none in the record.

Thus, we conclude any error was harmless.

## II. SAG CLAIMS

In his SAG, Boatright argues that he was denied his right to discovery, and a subsequent request for a continuance, which precluded his right to present a defense. He also argues ineffective assistance of counsel. For the reasons set forth below, we disagree.

A.    Right to Present a Defense

Boatright claims that he was denied his right to discovery and to review all the evidence against him. He claims that defense counsel only provided him with the police reports, which ostensibly hindered his ability to present a defense. He also claims that the trial court's failure to provide him with a requested continuance likewise hindered his ability to present a defense.

Under RAP 10.10(c), a SAG need not contain references to the record or citation to authorities. However, "the appellate court will not consider a [SAG] . . . if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Boatright claims that he

11

was prevented from properly presenting a defense by "the failure to provide me with . . .

complete discovery and denying a continuance to view it." SAG at 1. In his attachment to the

SAG, he gives as examples, "video, evidence, etc." However, Boatright does not describe how

any failure to provide him with this evidence affected his ability to present a defense, especially

when his counsel told the court that he was ready to go to trial. Thus, under RAP 10.10 we do

not consider this argument further.

B.     Ineffective Assistance of Counsel

The right to effective assistance of counsel is afforded criminal defendants by the Sixth

Amendment to the United States Constitution and article I, section 22 of the Washington

Constitution. *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). We review claims of

ineffective assistance de novo. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 347, 325 P.3d

142 (2014).

To establish ineffective assistance of counsel, Boatright must show both deficient

performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d

1251 (1995). If Boatright fails to establish either prong of the test, we need not inquire further.

*State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Deficient performance occurs when counsel's performance falls below an objective

standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). The

law recognizes a strong presumption of effective assistance, and Boatright bears the burden of

rebutting that presumption by showing the lack of a legitimate strategic or tactical reason for the

challenged conduct. *McFarland*, 127 Wn.2d at 335-36. Prejudice must also result, and the

12

appellant must demonstrate, that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 335.

Boatright alleges that he was denied his right to effective assistance of counsel because counsel failed to (1) provide him with "complete discovery," (2) follow Boatright's direction in terms of presenting his defense, (3) ask for a suppression hearing, (4) argue the video surveillance should be excluded under the best evidence rule, ER 1002, and (5) be prepared for trial. SAG at 1.

First, Boatright alleges counsel failed to provide him with "complete discovery." SAG at 1. As noted in Part III (A), above, Boatright does not state how any failure to provide him with video recordings or otherwise unspecified evidence had any effect on the result of the proceeding. Thus, this claim fails.

Second, Boatright alleges counsel failed "to do as asked by me." SAG at 1. There is no evidence in the record that counsel failed to do as directed by Boatright. If Boatright wishes to bring a claim of ineffective assistance based on matters that are outside the appellate record, he must do so by means of a personal restraint petition. *See McFarland*, 127 Wn.2d at 338 n.5 ("[A] personal restraint petition is the appropriate means of having the reviewing court consider matters outside the record."); RAP 16.3. Because there is no evidence in the record that counsel did not follow his client's direction as to pertinent matters affecting his representation, this claim fails.

Third, Boatright alleges counsel failed to ask for a suppression hearing concerning Hilchey's home video recording showing an individual, matching Boatright's description, prowling vehicles. Without deciding whether or not it was deficient to fail to ask for a

suppression hearing, Boatright presents no reasons why suppression would likely have been ordered. Therefore, under *McFarland*, 127 Wn.2d at 335-36, he has not shown a reasonable probability that the proceeding would have differed, and his claim of ineffective assistance therefore fails.

Fourth, Boatright alleges counsel failed to argue that the Hilchey home video recording should have been excluded under the best evidence rule. Generally, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by rules adopted by the Supreme Court of this state or by statute." ER 1002. Still, "[t]he original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." ER 1004(a). "[T]he admission or refusal of evidence lies within the sound discretion of the trial court and will not be reversed on appeal absent a showing of abuse of discretion." *State v. Clapp*, 67 Wn. App. 263, 272, 834 P.2d 1101 (1992). We find an abuse of discretion "only where no reasonable person would take the position adopted by the trial court." *Id*.

In this case, Hilchey edited the video to remove a period of time where Boatright was not seen in the video being recorded; that is, he only included video of the suspect prowling vehicles. Hilchey testified that the videotape copy was a fair and accurate representation of what was provided to the police. Hilchey also testified that the original recording was likely erased when he purchased a new computer.

Defense counsel objected to the admission of this evidence and made several arguments why the evidence should be excluded, but did not specifically cite the Best Evidence Rule.

However, defense counsel did object on the basis that the video was not "the original real document," VRP (June 27, 2016) at 115, which essentially is a best evidence argument. The trial court concluded there was no evidence in the record that the edited video copy was inaccurate or that the original hard drive data was destroyed in bad faith. We likewise find no evidence in the record that the video copy was inaccurate or destroyed in bad faith.

With this, Boatright has not overcome the presumption that his attorney's performance was reasonable and therefore has not established that his counsel provided deficient representation. Thus, his ineffective assistance of counsel claim fails.

Finally, Boatright alleges counsel failed to be prepared for trial. In his SAG, Boatright alleges that he "should not of found out during trial that the video [tape] was tampered with. Being prepared is also viewing all evidence and question witnesses and getting expert witnesses prior to trial. I feel that he failed to do that." SAG at 2. In the absence of any evidence to support these claims, they do not supply a basis on which to find ineffective assistance.

### III. APPELLATE COSTS

Boatright asks us to exercise our discretion to deny any appellate costs the State requests. Under RAP 14.2, if the State decides to file a cost bill, Boatright may challenge that on the basis of inability to pay.

Therefore, we decline to reach this issue.

No. 49218-1-II

## CONCLUSION

We affirm Boatright's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

WORSWICK, J.

MAXA, J.